LLC. Mr. Summers, are you ready to proceed? Good morning. May it please the court. Rolex watches are some of the most famous, exclusive, and sought-after watches in the world. Beckertime is an online retailer that sells Rolex-branded watches that have been altered with non-genuine parts. Beckertime advertised these watches as genuine Rolex, even though they contain non-genuine bezels and refinished dials that remove everything on it, and then re-coating it and re-applying the Rolex trademarks. Beckertime also sometimes drilled holes in the dials to insert inexpensive diamonds or other stones. These were not watches that Beckertime was trying to restore so far as possible to their original condition, like the spark plugs in the Champion case. The district court here correctly found that Beckertime's activity in selling these altered watches constituted trademark infringement and counterfeiting, and that Beckertime's disclosures, rather than avoiding confusion, were misleading, contained false statements, and caused confusion. You think it was error for the district court not to consider the Champion case at all? We believe that although the Champion case was not cited directly, the reasoning did follow Champion. It talked about the misnomer concept directly, but that Rolex watches have certain parts that are considered integral and necessary, and when those are fundamentally changed, the product is no longer a Rolex product. It's a materially changed new product, and that's the misnomer concept of Champion, and even though Champion was not cited directly, the reasoning of Champion was followed by the district court, but not fully applied. And that's where we go to the scope of injunctive relief. When determining that, and whether to award Rolex treble profits and attorney's fees, the district court erred by not fully following this court's established precedent in Meese, based on nearly identical facts. And by failing to follow this law of this court and adjoin all of Beckertime's counterfeiting activities, the Rolex brand is going to be tarnished, and the public is going to be left unprotected from deception and confusion. And while Rolex seeks the proper application of this court's precedent in Meese, Beckertime asked this court to disregard Meese based on irrelevant distinctions and apply a totally different standard based on case law from other courts involving completely different facts. Meese is bedrock precedent and should be followed. Twenty-five years ago, this court in Meese addressed the same infringing activities here, the sale of used Rolex branded watches that had been altered with non-genuine bezels and non-genuine dials. Beckertime argues that Meese is not applicable because it primarily addressed new Rolex watches. That is not correct. Beckertime addressed both new and used Rolex branded watches. This court held in Meese that bezels and dials are necessary and integral parts of a Rolex watch, and that the Lanham Act prohibits a party from making changes in integral parts of a product and then selling that altered product under the original trademark without full disclosure. At the district court level, Meese's activities were found to be trademark infringement and were enjoined. And the relevant issues on appeal in Meese were whether Meese's activities also constituted trademark counterfeiting, and if so, whether Rolex should be awarded treble profits and attorney fees under Section 1117B. On remand, the district court in Meese held that the activities in altering these watches were counterfeiting and awarded treble profits and fees to Rolex. And this is precisely the same kind of conduct we have at issue on this appeal. Meese was correctly decided, and there's no reason to change it now. To the contrary, Meese has been followed by several courts, including Michelle, in the Ninth Circuit, and several district courts throughout the Fifth Circuit and the Ninth Circuit. Thus, we have a situation here where we have a body of case law established over the past 25 years that squarely addresses Rolex watches and the kinds of changes that can't be made and that are impermissible because it results in a materially different product that can no longer bear the Rolex trademark. And this case law holds that bezels and dials are integral parts of a Rolex watch, and when those parts are altered and replaced with non-genuine parts, the watch is no longer a Rolex watch and instead is a counterfeit under the law. Now, after a two-day bench trial, the district court issued a memorandum and opinion that correctly found that bezels and dials are necessary and integral parts of a Rolex watch. But having made this finding, it was legal error and an abuse of discretion for the district court not to exclude non-genuine bezels and non-genuine dials in Sections 1A and 1B. And the district courts—I'm going to address bezels first. The district court's failure to include bezels in Sections 1A and 1B can't be reconciled with a statement that the district court made in footnote three of the opinion where the district court was talking about watch parts. I'm going to read part of that footnote. The court said, while the court has declined to include bezels in 1A and 1B, the court finds advertisements labeling watches with a non-genuine bezel as a Rolex is likely to confuse customers. Bezels have repeatedly been found to be an integral part of a watch. Thus, labeling an entire watch as a Rolex watch when this integral part is non-genuine produces too high a risk of confusion to be permissible. And the court cited the Meese case for that proposition. So the question is, if labeling an entire watch as a Rolex when that watch has a non-genuine bezel produces too high a risk of confusion to be permissible, as the district court found, then the sale of such watches also should have been adjoined in Sections 1A and 1B of the injunction because that is the purpose of those sections. Let me ask you a question because you know the record and I don't at this point. What does the record show about the volume of non-genuine Rolexes being sold in this country or, I mean, what is your evidence of, and I don't have to get down to the weeds, but I mean, what is your basic evidence about the problem to Rolex from what is being put forth as possibly genuine Rolexes that aren't? Well, aside from the evidence in this case, we don't have evidence in the record about the size of the problem other than it is an enormous problem and the counterfeits range from 100% non-genuine and completely fake watches to what Becker Time has called Frankenwatches where they wrote an article about that where they said, you know, beware of watches that are partially genuine and partially non-genuine and buy from a trusted dealer like Becker Time. That right there was misleading, but we don't have evidence about the volume in terms of dollars or units, but we do know that Becker Time here, about a little over 50% of their business is the counterfeit watch business and they've sold and made millions of dollars over the years. Where is that in the record? Where is it in the record that they knew that watches were counterfeit? Where they knew the watches were counterfeit? Well, the definition of a counterfeit watch is a spurious mark that is either identical with or substantially indistinguishable from a registered mark. And when Becker Time reapplied the Rolex marks to do that, they did so intentionally, they knew it wasn't their mark, that it was Rolex marks, and that under the law is intentionally using a mark that is a counterfeit mark. And the Louis Vuitton case talks about that, for example. And so we do have evidence that Becker Time applied the, they removed the original Rolex trademarks, reapplied our marks, which only a trademark owner should be able to apply a trademark to a product, especially when it's materially different like this. They knew it wasn't their marks, then they sold them as genuine Rolex. And that's all we have to prove. They knew they weren't their marks, and this activity was not authorized by Rolex. That is in the record. John Davis testified to that extent, or Mr. Esposito in the case. So that, the foot, getting back to the footnote, it shows that the district court knew the law, but just didn't follow it. And then moving now from bezels to dials, Sections 1A and 1B do enjoin the sale of certain kinds of dials, but only when the dial's been scraped and then the Rolex trademarks are reapplied. And the injunction also specifically authorizes Becker Time to customize dials, so long as the trademarks are not removed. This means, for example, that Rolex can take an original, sorry, that Becker Time can take an original Rolex dial, drill holes in it, and put inexpensive stones in it, or put other embellishments on there, and keep the Rolex trademark on there. But Mies and Michelle found that this kind of activity constitutes counterfeiting. But they're just refinishing their dials. Why wouldn't that qualify as a secondhand good under Champion? Well, it would qualify as a misnomer. In Champion, we have those two frameworks. Repairing reconditioning, which is okay, you can keep the trademark. And then when you, there's the misnomer concept, where you alter a product such that it's no longer a Rolex product. And when you refinish a dial, in this case, that involved taking a dial, scraping it completely down to the coatings that are not Rolex coatings, putting on diamonds, and other inexpensive stones, and then reapplying the Rolex trademarks. And that right there is an alteration to a necessary and integral part of the watch. Mies holds that. Mies directly addressed the same thing. In Mies, there were original dials where the trademarks were not removed. Mies was putting inexpensive diamonds in there, and the court said, that's counterfeiting. That's changing the dial. It's important that the Rolex mark be applied to its own products and not altered products that are no longer a Rolex product. And the district court here found that Becker Times watches are not Rolex watches. They're a different product. So regardless of whether the dial is refinished or not, the Rolex mark should not be maintained on the watch anymore. If what you want to do, you're an entrepreneur, and what you want to do is persuade buyers, potential buyers, that this might not be a genuine Rolex watch because you'd have to pay X for it, and you can buy mine, which is X minus something. When is that legitimate? I mean, when is that legitimate? What can they do where they can do something that looks sort of like a Rolex watch, but it just isn't? And they don't say that it is. They just say, well, we've fixed this up so it kind of looks like one, but it's not one. We're clear on that. It's not a Rolex watch, but it looks good, and so you can buy that. You don't have to pay as much money for it. What's wrong with that? Well, what's wrong with it, it's wrong on many levels, first of all. It's not a Rolex watch anymore. It falls within the misnomer concept. Yeah, but let's say the seller says, this isn't a Rolex watch, and that's why you're paying X minus, whatever the Rolex watch price would be. You're paying less than that, but it's a good watch, and it looks kind of like a Rolex, so why not go with this one? Okay, number one, it's a counterfeit, and number two, we have to talk about the importance of post-sales infusion. What is it that makes it a counterfeit? Pardon me? If the seller of the fake watch says, this is not a Rolex, okay, understand that, but we've got it fixed up so that it looks kind of like a Rolex, and your friends will think you're wearing a Rolex, okay, which apparently is good for something, and so where is the line here between, we admit this isn't a Rolex, we've got it, it's just a good watch, and it looks good, it looks kind of like a Rolex, so let's go with it. Where's the line? Well, we don't have to decide how much modification can be made before it's permissible to keep the Rolex mark on it. We don't have to decide what other components can be changed. I mean, a counterfeit is a counterfeit under the law, whether it's 100% counterfeit or only partially counterfeit, like Becker-Thompson watches. The key to what makes it a counterfeit, I know this is the kind of question I shouldn't be asking, because I should be presumed to know, but is what makes this case a problem for Rolex is the fact that it is represented to be a Rolex, or it is represented to be just like a Rolex in terms of how it looks. Your friends are going to think you've got a Rolex. Yes, Your Honor. The problem is that the Rolex mark remains on the watch. It remains on the watch. That's your key problem. If they want to modify the watches and sell them without our trademark on them, they're welcome to do that. Post-sale confusion is just as actionable under the Lanham Act as confusion that occurs at the time of sale. The key is that it's got the Rolex name on it. Yes, absolutely. Yeah, that's the key. Once you modify it, you change Take the name off. Yes, take the name off. And we've suggested that. Take the name off and go ahead and sell it. Yeah, but don't have our mark on there anymore. The district court found that Rolex has been known for a decade that Becker-Thompson was doing what it was doing. Do you dispute that finding by the district court? Well, there was knowledge about Becker-Thompson, but we contend there was not knowledge of the counterfeiting activities. The knowledge we had had to do with the importation of watches for repair or return, not that there was counterfeiting activity going on. And I see that I'm out of time, Your Honor. Did I answer your question? Yes. Thank you. Mr. Belkin. Yes, Your Honor. I'm going to have just one second here. Good morning. May it please the court. My name is Michael Belkin, and I represent the appellees Becker-Thompson LLC and Mr. Matthew Becker. I will turn to some of the questions that you had for my opposing counsel in a second, but I want to start by this overarching thing. This case is not about fake Rolexes. This case is not about counterfeit Rolexes. This case is about decades old, 20, 30, 40, and 60-year-old colloquially understood as vintage Rolex watches. This case is about whether these decades old Rolexes are unique among all goods, and that no matter the levels of disclosure, and you can see it in the record, Mr. Becker at every stage, whether it be in communications with his customers, the advertisements on his website, or in the actual point of purchase sale, made disclosures as to the nature of the changes he made. So no matter the level of that disclosure, no matter the watch, and again, every single watch here is decades, plural, decades old, no matter what the market or consumers perceive or do not perceive about these watches that Becker Time sells, according to Rolex's theory of the case, trademark law dictates that no repairs or customizations can be made to that watch that change any part with a non-Rolex part, because if those changes are made, that watch is a counterfeit. That is Rolex's theory of the case. Imagine that. You own a 40-year-old Rolex, and you replace a part with a non-Rolex part. It is no longer a Rolex. His answer to you was you remove the Rolex name in that case. This isn't a slippery slope argument. This is precisely what their two witnesses, two corporate Rolex employee witnesses, that's a sum total of their evidence, testified. This is Rolex's theory of the case. This case is also about Rolex's attempt to mislead this and that the district court found intentional, deliberate infringement by Mr. Becker. It found no such thing. Record on appeal 2161, 2162, and 2170, the court expressly said that Rolex did not meet its burden to show any intentional or bad faith conduct by Becker Time. Quote, unquote, Rolex failed to show subjective and knowing bad faith, close quote. That's the opinion on page 14, 2170. Yet Rolex's response and reply brief to this court expressly makes the false assertion that there was intentional and deliberate infringement found by the district court in order to paint the district court's finding of latches, to find that no equitable disgorgement was appropriate, and to issue the injunction that it did was all an abuse of its discretion. That is beyond the pale for Rolex to do. There are really two issues before this court. First, did the district court err in failing to ever address, let alone even acknowledge, the Champion decision and the Champion framework that it has to be imbued into the historical likelihood of confusion analysis. It did not mention Champion at the summary judgment stage, and it did not mention Champion in its judgment after trial, despite full briefing and argument over that particular line of cases at every stage of this litigation by Mr. Becker and Becker Time. As we have argued, the district court's failure to do so was clear legal error. So the district court did find that the watches, the modified watches that you have were modified with aftermarket parts and diamonds. Correct. So if that was their finding, does it still fit within the Champion line of cases? It does. In fact, I can turn to that now. It wasn't being restored to the original condition. And Champion did limit itself to that holding. Champion simply said that a reseller of used goods is permitted. In fact, in Champion itself, the refurbisher had removed the Champion mark, had ground down the electrode, replaced it with new metal, and reapplied the Champion mark. That's expressly in the Champion decision. Now that was a refurbishment case. Cases that have come out since then, including Brangen out of the Northern District, but also the Vortec case in the Second Circuit, the Nitro Leisure case out of the Federal Circuit in 2003, all have addressed both the concept of refurbishment as well as changes that are made, modifications, customizations, whatever word anyone wants to use, and has analyzed it under the Champion framework. It's not to say that Champion supplants the likelihood of confusion analysis, but it informs it further, and that was not done by the district court here. And indeed, opposing counsel mentioned the necessary and integral test as though that's the only test that applies, but frankly, the Nitro Leisure court found that the material differences test, which is the Federal Circuit's version of the necessary and integral test that this court announced in 1998 in the Meese case, is best left to new and lately used goods because, quote, unquote, consumers have different expectations with respect to any kind of changes that are made to new goods than they do with respect to used goods. And we've got to turn back to what's going on here in this case. This case is about decades, and that's on the end, decades old, genuine Rolex watches. Genuine Rolex movement. Genuine Rolex case that have been refurbished, restored, and have had the bezel, which is a part that is removable and replaceable, and have had the dial repainted and had diamonds or rubies or whatever added to it, with full disclosure of those changes at every stage by Mr. Becker. The concept that Rolex presents to this court and presents to the district court is that they have the right to control their mark from the cradle to the grave of these watches. And if you read Champion, they use the very same example that I used in our briefing, which is imagine a 1970s muscle car, a Chevy. And imagine a Chevy Camaro that has been perhaps neglected for 20, 30 years and is a barn find and its paint is worn, its windshield is cracked and is pitted, and its engine no longer runs. And imagine instead of refurbishing it to perfect original shape, even better than original shape, you install some modern conveniences, fuel injection. You replace the engine with a modern engine. You repaint it with a metallic paint that's not available in 1970, but is now available. Rolex's theory is now you have to no longer call that a Chevy, even if you call it a Chevy RestoMod, even if you disclose all the changes that you made and the consumer is not confused as to the nature of that used product. That is Rolex's theory of the case, that you would have to remove those Chevy markings. So, turning back to, assuming that the district court's finding of infringement was not a legal error, it weighed the evidence that Rolex presented at trial to find that latches barred Rolex's claims for disgorgement. What was that evidence? It was evidence that Gibney Anthony Flaherty, Rolex's counsel that's sitting behind counsel's chair, and its trial counsel at court, was aware for over a decade that Becker Time was making customized Rolex watches, used Rolex watches. How was it aware? On the documents that the customs would send to that firm on sometimes the first page, most often on the second page in a big box, it would describe the nature of the goods. It would describe them with custom added diamonds. It would describe them as, you know, all the goods, all the things that they've complained about, drilling holes and putting in diamonds on the dial. Those were there. The testimony at trial by the paralegal at that firm was, it was not her job to look at the second page. Her job was only to look at the first page and see what was being imported. And the judge found that not credible because she also emailed internally within the firm calling Mr. Becker and Becker Time's watches, quote unquote, junk. How is that not awareness of what Becker Time was doing for a decade? That was the basis of the Lachey's finding. And ultimately, it found that there was no equitable basis to disgorge. So there's nothing to treble. But even if you were to consider trebling under 1117B, that language is intentionally using a mark or designation where knowing such mark is a counterfeit. There is no evidence below that Mr. Becker felt, believed, or conceived of what he was doing as being intentional or counterfeit, not on any level. He published articles, yes. But this court in Abraham made it very clear, awareness that the plaintiff doesn't like what you're doing is not the same as awareness that it's illegal. And there was absolutely, positively no testimony that showed that. And hence, the district court found that there was no intentional conduct by Mr. Becker or Becker Time. And that there was no deliberate or bad faith conduct by him. So there would be no basis for trebling. And ultimately, the injunction in this case is based on the factual findings. The only testimony, the only evidence that Rolex admitted as to likelihood of confusion was its repeated citation, but this is Mies, but this is Mies. It had two witnesses, both of them corporate Rolex witnesses, testifying as to their belief as to what a consumer would or wouldn't perceive about these watches. None of them were experts. There was no expert testimony. There was no survey evidence. There was nothing but their ipsedixit as to what was confusing as to Mr. Becker's and Becker Time's watches. Certainly, we can see the bias of their testimony. Ultimately, the only evidence that they relied upon were 30 emails over the course of 15 years from prospective and actual customers of Mr. Becker and Becker Time. And what did those emails reveal? They revealed that at every stage, Mr. Becker was honest and forthright with his potential and actual consumers. He would describe the exact nature of the changes he made to the watches. He would describe exactly what was and was not original Rolex on them, and he would always make it right. There was no evidence, in fact, that any Becker Time customer ever complained to Rolex confused as to who was responsible for the changes to the watches. There was testimony at trial by their own witnesses that they were not aware of a single complaint by a consumer about Becker Time or Mr. Becker. Not a single one in over 15 years of doing business and over 10,000 transactions in just the last four years that are at play. So, ultimately, there is no basis to find an abuse of discretion in the district court's entry of no profits being disgorged. It's entry of a judgment that is a tailored injunction. But ultimately, their error, its error was to refuse to acknowledge and analyze this case under the champion framework, or at least explain why it didn't apply. It did not do so. Now, turning to the first issue that really is before this court, the decades-old watches at issue here are different from new or lightly used watches under trademark law. Mies dealt with primarily new or lightly used Rolex watches. It dealt with a defendant that avoided consumers, quote-unquote, like the plague. It dealt with a defendant that removed Rolex parts and put in parts that bore a Rolex mark that were not Rolex parts. That was a true counterfeiting case. None of that is at issue here. These are all different in every respect, factually, and the likelihood of confusion analysis is a factual analysis. So, reliance on the Mies case is simply misplaced. As I was saying, consumers have different expectations with respect to used goods. That's what Nitro Leisure found. That's what Champion said. And that's why Champion and Sprogeny focused so heavily on the disclosures that a particular defendant makes in determining whether or not there is a likelihood of confusion. And to the extent there are changes that need to be made to those disclosures, that's what Champion ordered. And that's precisely what could have been ordered here had the Champion line of cases been properly analyzed. As the courts in Champion, Nitro Leisure, Vortec, and the Northern District of Texas case Brangen recognized, if the manufacturer is not associated with the inferiority in the repair or customized used goods, and there is full disclosure, trademark law must yield to that refurbisher. At bottom, the evidence in this case involves two watches. This is the evidence that Rolex presented. Watch one was advertised and disclosed by Becker-Thyme as a pre-owned watch, containing a Rolex movement and case, a silver dial that had been refinished with, quote, 10 custom added genuine diamonds and rubies. Becker-Thyme further advertised and disclosed watch one as having a bezel not made by Rolex. That's a quote. It is a custom made aftermarket bezel with genuine round brilliant diamonds and four rubies bead set in yellow carrot gold. Watch one was approximately 40 years old when it was sold to Rolex's investigator. Watch two at nearly 50 years old when it was sold was advertised and disclosed at Becker-Thyme as a pre-owned watch, containing a genuine Rolex movement and case, and containing an aftermarket acrylic crystal and a silver dial that had been refinished with 10 custom added round brilliant diamonds. Further advertised watch two as having a bezel not made by Rolex. It is a custom made aftermarket bezel with round brilliant diamonds set in stainless steel. These vintage watches are not counterfeit watches. These aren't the street corner purveyors selling a Folex. Let's just call it that as, you know, these are Rolex watches that have been modified. This is not a counterfeit in the colloquial sense, rather than genuine Rolex watches with genuine Rolex cases and genuine Rolex movements. And at all times, Becker-Thyme fully disclosed the repairs, the refurbishments, and customizations made on these and all other watches to its customers. The legal error here is that the district court failed to apply the Champion framework to its likelihood of confusion analysis. And ultimately, the holding of Champion, that full disclosure, gives the manufacturer all the protection that it deserves under trademark law. Now, I want to turn quickly to the Nitro Leisure case, and that's a case that really grappled with what is the test we apply in the new goods context, and what is the test we apply in the used good context. The plaintiff, just like here, argued that the material differences test is the test that should apply to these, in that case it was golf balls, and whether or not there were material differences, and argued that the golf balls didn't fly the same way, and they didn't have the same exact performance as the new golf balls, and the goal wasn't to make them as close to new as possible. And the district court agreed, and found that the Champion case is what applied, and held that there was no infringement. On appeal, the appellate court said the material differences test has to be cabined to new goods, because consumers have very discreet expectations with respect to new goods, and any differences, even minute differences, might pass off as being those of the manufacturer, and be blamed by those consumers on the manufacturer. But with respect to used goods, consumers have a different expectation. And for that reason, the appellate court approved the district court's use of Champion, along with the other likelihood of confusion factors, to find that it was not an infringement or a counterfeiting in that case. And ultimately, the question was a matter of disclosures. There were disclosures there, and there were disclosures here. So I do want to talk about the disclosures for one more second, and that is what Rolex hasn't mentioned, that at every stage of this litigation, Mr. Becker and Becker Time have been willing to make any additional disclosures that would be necessary to alleviate whatever perceived confusion there is out there. But Rolex has never taken up Mr. Becker or Becker Time on that. And frankly, that's what this case is about. This case is about Rolex wanting to control not just the new goods. The only thing it sells, through its authorized dealers, are new Rolex watches. The only thing Mr. Becker and Becker Time sells are decades-old used Rolex watches. It wants to be able to control the market not just for the new Rolex watches, but the until they're discarded into the trash bin. That's the goal of this lawsuit, and that's the goal of this appeal by Rolex. At trial, they bore the burden of showing a likelihood of confusion. We would posit they never met that burden. They relied on testimony of its own employees and 30 emails. That was all they relied upon. They didn't have any survey evidence. They didn't have any testimony by a consumer, and indeed conceded that not a single Becker Time customer ever complained to Rolex about the nature of Becker Time's watches. I will sum up by saying that this Court should find that this Court legally erred by failing to acknowledge Champion and the analytical framework that it mandates for the likelihood of confusion analysis for both used and customized used goods. And if the Court does not find that the district court erred, it should affirm on all findings with respect to the injunction, the finding of latches, as well as finding that the balance of the equities favored no discouragement. Thank you. I'd first like to address the argument that we misled this Court. That is not correct. Rolex's brief addressed the intent factor, which is a factor number six, and the district court said that factor number six was the intent factor in the digits of confusion on likelihood of confusion. That's at the record 2165 of the Court's decision. Then the district court expressly found that the intent factor favored Rolex. It said that at the record at page 2168. That finding was correct. The intent factor did favor Rolex. It didn't mean there was a finding of subjective bad faith. The Court didn't find there was subjective bad faith, and we never said that. At one point, we talked about good faith, bad faith, but we never said that the district court found subjective bad faith. Now, the Champion case dealt with two concepts, repair and reconditioning, and then when it's okay to have disclosures that you are repairing and reconditioning a product, but the Supreme Court also said cases can be imagined where the repair and reconditioning would be so extensive that it would be a misnomer to call the product by its original name. So these two frameworks, and we fall into the misnomer framework. We do because the alterations are such that it's no longer proper to call the watch that's been altered by Becker-Thyme as a Rolex watch. There's also heavy reliance on Meese. Does Meese deal with decades-old watches at all? The age of the watch is irrelevant, Your Honor. There's no evidence that the age of the watch matters. I mean, Becker-Thyme is modifying these watches and altering them to look like genuine Rolex. They advertise them as genuine Rolex. It takes expertise to determine if it's genuine or not. Becker-Thyme has admitted that customers and dealers can't tell the difference between a genuine watch and one that's been altered. There's an article they wrote on that. It's in the record. So disclosures are okay when you're just repairing and reconditioning, but when you are altering the watch so that it's no longer the product made by the trademark owner, disclosures aren't sufficient. They're just not. Whether the watch is 100% non-genuine or only partially non-genuine, the Lanham Act makes no distinction between counterfeits at that gradation. It's either a counterfeit or it's not. And disclosures don't travel with the watch. Post-sale confusion here is a very important aspect, and it has been an aspect of the cases where someone on the street or someone who later purchases that watch when it's resold or it's passed down to someone, these disclosures by Becker-Thyme are not going to travel with that watch. So the post-sale confusion has been recognized by the cases, and it's a very important aspect. It's just as actionable under the Lanham Act as confusion that occurs at the time of sale. Now, Becker-Thyme's talked a lot about its existing disclosures and how great they are. Well, they say in their disclosures, they are selling you a genuine Rolex, bold letters, genuine Rolex. If you dig deeper, you might find that it might have an aftermarket bezel, right? But so many customers wrote to Becker-Thyme and said, I'm confused. You used the word customized. What does that mean? I don't know what that means. Becker-Thyme, if it wanted additional disclosures, which the district court erroneously included in the injunction, Becker-Thyme had the burden to show that if its existing ones were not sufficient, it had to come forward with evidence of new disclosures that would be. That's part of the remedy phase. And they didn't do that, and they had the burden. We hear the car analogy a lot in our cases. There's no evidence of cars here. There's no case law regarding cars. There's lots of case law regarding Rolex watches and the changes that are impermissible. So the car analogy is really a red herring, and it's argument of counsel. There's no evidence in this record about what you can do to a car or not. There's been a lot of talk about latches. Well, latches is not an extenuating circumstance that bars recovery of treble profits and attorney's fees under Section 1117B. You know, an extenuating circumstance is something like you can't provide for your family. Latches is not like that at all. And there's no evidence of any extenuating circumstances here. And Becker-Thyme had the burden to prove extenuating circumstances. It's an affirmative defense, and they didn't do it. And finally, there's been some argument about trying to distinguish Meese and that Becker-Thyme didn't engage in all the bad acts that Mr. Meese did. Well, they didn't have to. They engaged in some of them, and that's sufficient. That case did not turn on the additional acts that they say are distinguishing. I see I'm up with my time. Thank you very much, Your Honors. Thank you. The case is submitted.